UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDY L. ANDERSON,            ) | CASE NO. C05-1193-MJP |
|                                               ) | |
|         Plaintiff,                          ) | |
|                                               ) | |
|     v.                                       ) | REPORT AND RECOMMENDATION |
|                                               ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, Commissioner ) | DISABILITY APPEAL |
| of Social Security                      ) | |
|                                               ) | |
|         Defendant.                        ) | |
| _____ ) | |

Plaintiff Randy L. Anderson proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance (DI) benefits after a hearing before an Administrative Law Judge (ALJ).

Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that the Commissioner be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1958.[1] He obtained a high school GED. Plaintiff previously

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

worked as a concrete and long-haul truck driver and as a sheet metal fabricator.

Plaintiff filed an application for DI in April 2002, alleging disability beginning March 1, 2000. However, based on the denial of a previous application, the ALJ specifically limited the current determination to the period beginning December 29, 2001. [2] His alleged disabling conditions included disorders of the back, internal derangement of the left thumb, and depression. (*See* AR 29, 345). Plaintiff's applications were denied initially and on reconsideration, and he timely requested a hearing.

ALJ Edward Nichols held a hearing on April 13, 2004. (AR 411-41.) The ALJ heard testimony from plaintiff and vocational expert William Weiss. On September 25, 2004, ALJ Nichols issued a decision finding plaintiff not disabled. (AR 21-28.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim. (AR 8-11.) Plaintiff appealed this final decision of the Commissioner to this Court.

# JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

# DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

---

official policy on privacy adopted by the Judicial Conference of the United States.

[2] A May 2001 application, also alleging an onset date of March 1, 2000, was denied on December 28, 2001. Plaintiff had not sought further review of that claim.

01 engaged in substantial gainful activity during the relevant time period. At step two, it must be

02 determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's lumbar

03 degenerative disc disease and status-post back surgery, as well as his status-post left carpal

04 metacarpal injury with arthroscopy and degenerative arthritis of the left thumb, to be severe. Step

05 three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found

06 that plaintiff's impairments did not meet or equal the criteria for any listed impairments. If a

07 claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

08 functional capacity (RFC) and determine at step four whether the claimant has demonstrated an

09 inability to perform past relevant work. The ALJ found plaintiff unable to perform his past

10 relevant work as a concrete and long-haul truck driver. If a claimant demonstrates an inability to

11 perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that

12 the claimant retains the capacity to make an adjustment to work that exists in significant levels in

13 the national economy. The ALJ found that although plaintiff is unable to perform a full range of

14 light work, he is capable of performing work that exists in substantial numbers, including work as

15 a gate guard, a dispatcher, a sorter, and a semi-conductor bonder.

16 This Court's review of the ALJ's decision is limited to whether the decision is in

17 accordance with the law and the findings supported by substantial evidence in the record as a

18 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir.1993). Substantial evidence means more

19 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

20 mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

21 (9th Cir.1989). If there is more than one rational interpretation, one of which supports the ALJ's

22 decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

2002).

In this case, plaintiff argues that the ALJ erred by not finding his depression to be a severe mental impairment, in finding that he had the RFC to perform light work, and improperly relying on the testimony of the vocational expert to find him capable of performing other work in the national economy. Plaintiff further argues that the ALJ, in finding him capable of sedentary work, failed to properly consider the vocational impact of his impairment. He asks for an award of benefits or, alternatively, remand for further proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Mental Impairment</u>

At step two, plaintiff must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*. At step two in the present case, the ALJ determined that, although plaintiff's back and left thumb conditions amounted to severe impairments, his mental health condition was not severe.

Plaintiff asserts error in the ALJ's failure to find his mental impairment severe, claiming

01 the ALJ ignored highly detailed, probative evidence of the severity of his depression. He also

02 points to the impact of the combination of severe mental impairments. He alleges the combination

03 includes the following psychiatric factors: ongoing manic depression; chronic pain that is, at least

04 in part, somatically based; and panic attacks.

05       In determining plaintiff's mental impairment was not severe, the ALJ relied on the reports

06 of Dr. David Chang, plaintiff's treating physician, and Dr. Brian Ready, a pain specialist. (AR 25.)

07 The ALJ also considered the report of Dr. H. Richard Johnson [3] on the issue of plaintiff's

08 depression, but afforded it little weight, finding it unsupported by other references in the file. *Id.*

09 The ALJ emphasized plaintiff's lack of significant treatment for conditions reported by Dr.

10 Johnson other than "light use of medication." *Id.* As to the occurrence of plaintiff's panic attacks,

11 the ALJ discounted somewhat plaintiff's reports, stating, "claimant's purported panic attacks seem

12 added on, almost as if the claimant was trying to tack something onto his preexisting and well

13 documented conditions." *Id.* Further, based on plaintiff's testimony at hearing, the ALJ found

14 the panic attacks not to have lasted for the requisite 12-month duration. *Id.*

15       In general, more weight should be given to the opinion of a treating physician than to a

16 non-treating physician, and more weight to the opinion of an examining physician than to a non-

17 examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Dr. Johnson is an

18 orthopedic physician, who in the course of his examination found plaintiff to have "major

19 depressive disorder, mild, controlled currently with medications," and "chronic pain disorder with

20

---

21     [3] Dr. H. Richard Johnson should not be confused with Dr. Edward Johnson, a family
practitioner who treated plaintiff in Kettle Falls, Washington, whose reports are part of the record
22 in this case.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

physical and psychological features." (AR 393-94.) Inasmuch as Dr. Chang was plaintiff's treating physician and Dr. Johnson was not a treating physician, the ALJ appropriately gave more weight to Dr. Chang's opinion. *Lester*, 81 F.3d at 830. Further, given that Dr. Johnson apparently conducted no psychological testing and is an orthopedist rather than a psychologist or psychiatrist, the ALJ's position is reasonable. Additionally, Dr. Johnson's report equivocates on the mental health issue, in that it states plaintiff has a "major" depressive disorder, but later in the same sentence describes the depression as being "mild" and controlled by medications. (AR 393.)

The ALJ must consider the combined effect of all of a plaintiff's impairments on the ability to function, without regard to whether each alone is sufficiently severe. *See Smolen*, 80 F.3d at 1289-90. While plaintiff refers to having a "combination" of mental impairments, the medical reports reference only depression and anxiety, for which plaintiff was prescribed amitriptyline and bupropion. (AR 306.) There appears to be no evidence in the record to support plaintiff's claim of "ongoing manic-depression." (Dkt. 13 at 5.) Moreover, through a series of visits, Dr. Chang found plaintiff's depression stable and reconfirmed the lack of need for a psychology consult. (AR 287, 298, 308.) Dr. Ready, while increasing plaintiff's dosage for amitriptyline, concurred in not recommending a psychology consult. (AR 287.)

Finally, although plaintiff's anxiety is mentioned in the medical reports, there was no reference by doctors to panic attacks. (*See, e.g.*, AR 306, 307.) Plaintiff testified at hearing that he had experienced a "big" panic attack lasting five minutes about a month prior to the hearing, and had previously experienced "little" attacks lasting about one minute. (AR 422.) He stated that he "might've" mentioned these lesser attacks to Dr. Chang a year or so earlier. *Id.* Absent corroboration, however, the ALJ's finding that the panic attack condition had not lasted the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

requisite 12-month duration is reasonable.

### Residual Functional Capacity, Light and Sedentary Work

RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-8p. In this case, the ALJ concluded plaintiff retains an RFC to perform light work, and assessed the following restrictions: standing/walking 4 hours in an 8-hour day; limited at bending, stooping, and kneeling; very limited grip and manipulation with his left hand; and minor limitations in concentration. (AR 26.)

Although finding plaintiff unable to perform a full range of light work, based on the testimony of the vocational expert, the ALJ found plaintiff capable of adjusting to occupations that exist in substantial numbers in the national economy. Those capabilities included work as a gate guard (DOT 372.667-030), dispatcher (DOT 239.367-014), sorter (DOT 529.687-010), and semi-conductor bonder (DOT 726.685-066). (AR 28.) The ALJ noted that, at hearing, plaintiff stated that he declined a position as a gate guard offered to him because of commuting difficulties, rather than an inability to perform the job. (AR 25-26, 425-26.) In assessing plaintiff's RFC, the ALJ gave very substantial weight to a performance capacity evaluation done by plaintiff's treating physician, Dr. Chang. (AR 24, 26, 401-03.) In addition, the ALJ relied on the records and reports of Dr. Ready and Dr. Edward Johnson in reaching his determination. (AR 24-25.) The ALJ gave the report prepared in connection with the State Disability Determination Service by Dr. Thomas Fleming "a fair degree of weight." (AR 26, 319-25.) Finally, as mentioned above, the ALJ found the assessment of Dr. H. Richard Johnson – that plaintiff was unable to perform even sedentary work on a regular and continuous basis absent possible further surgery to the thumb – to be at odds with other sources. (AR 24.)

01       Plaintiff argues that based on the standing/walking restriction found by the ALJ, he should

02 be found unable to perform any light work and should be restricted to sedentary work.  He also

03 argues that his impairments were never considered by the Social Security Administration in a

04 single cohesive analysis, that the ALJ failed to consider all impairments and relevant evidence in

05 rendering the RFC assessment, and that he is significantly compromised in the performance of

06 sedentary work based on his lack of bilateral dexterity.

07       However, plaintiff fails to demonstrate any error in the ALJ's RFC assessment.  It is

08 irrelevant that plaintiff may not be able to perform the full range of all light duty jobs.  The ALJ

09 found that plaintiff was capable of performing only a limited range of light duty work, and utilized

10 a hypothetical that assumed the more narrow range of light duty work in obtaining the opinion of

11 the vocational expert.  (AR 430-31.)  The vocational expert testified that the positions of gate

12 guard, sorter, semi-conductor bonder, and dispatcher could be performed with these limitations.

13 (AR 431-33.)  Also, as with his mental impairments, the ALJ appropriately gave more weight to

14 Dr. Chang, a treating physician, as compared to Dr. Johnson, an examining physician.  *Lester*, 81

15 F.3d at 830.

16       Further, the ALJ considered all of plaintiff's impairments, including his mental impairment,

17 in making his determination: "However, to be charitable, his alleged [mental] symptoms will be

18 taken into account in assessing his residual functional capacity."  (AR 25.)  The ALJ also

19 recognized minor limitations in concentration.  (AR 28.)  The ALJ recognized the combined

20 impact of the exertional limitations produced by plaintiff's back and left thumb throughout his

21 decision.

22       Finally, plaintiff's argument that his lack of bilateral dexterity precludes even sedentary

work lacks merit. The vocational expert testified, based on a hypothetical that took all of plaintiff's limitations into account, that he was capable of performing other jobs that existed in substantial numbers in the national economy. As discussed above, this finding is supported by substantial evidence.[4]

Vocational Expert's Testimony Regarding Left Hand Limitations

Plaintiff asserts that the ALJ failed to meet his burden at step five to show he is capable of performing other work. The ALJ based his step five finding that plaintiff is capable of performing work as a gate guard, a dispatcher, a sorter, and a semi-conductor bonder on the testimony of William Weiss, the vocational expert. (AR 26-28, 431-33.) In finding plaintiff not disabled, the ALJ refers to the fact that his limitation relates only to his left, non-dominant hand. (AR 23, 26.) The limitation was taken into account by the vocational expert. (AR 430-36.)

Plaintiff takes exception with the vocational expert's assertion that he could perform the job of sorter one-handed, arguing such an assertion does not conform to the medical evidence.[5] In particular, plaintiff relies on a General Aptitude Test Battery he underwent in 2003 as part of a vocational assessment. (AR 396.) The result of that test lists plaintiff's motor coordination at 2%, and both finger dexterity and manual dexterity at less than 1%. *Id.* Plaintiff interprets these

---

[4] Plaintiff asserts that he is in reality limited to sedentary work and, with his inability to perform jobs that require bilateral manual dexterity, the Medical-Vocational Guidelines compel a finding of disability. However, the ALJ's step five finding was based on substantial evidence.

[5] Plaintiff makes repeated reference to the position of potato chip sorter, a position he describes as requiring that a worker perform quick movements, as well as stand for 6 to 7 hours per day. However, neither the ALJ, nor the vocational expert mentioned such a job. Instead, the vocational expert described a sorter or basket filler position as typically involving removing things from a conveyor belt or bottling line. (AR 432.) In addition, the description of this job proffered by plaintiff does not mach the DOT number cited. *See* DOT 529.687-010 (Basket Filler).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

percentages to relate to his overall ability to perform tasks.

The presumptively bilateral manual dexterity test, however, is not relevant. At hearing, the ALJ utilized a hypothetical to the vocational expert that assumed "very limited gripping manipulation" with the left hand. (AR 430.) Both the ALJ and plaintiff's counsel questioned the vocational expert as to plaintiff's suitability for the job of sorter in light of his left hand limitations. (AR 432-34.) The vocational expert then specifically addressed plaintiff's ability to perform the named jobs essentially one-handed, stating with respect to the sorter position that it is "primarily done one-handed," and further stating: "I don't think bimanual dexterity would be a requirement." *Id.* Plaintiff further fails to identify any error in the ALJ's step five decision. Therefore, the ALJ's reliance on the vocational expert's testimony is supported by substantial evidence.

## **CONCLUSION**

The ALJ's finding that plaintiff is not disabled is supported by substantial evidence and free of legal error, and, therefore, should be AFFIRMED.

DATED this  9th  day of  March, 2006.

_____
Mary Alice Theiler
United States Magistrate Judge